E. S. BEAVERS *et al.* v. ALBERT E. MCKINLEY *et al.*

1. DEED *from Father to Son — No Implied Trust.* No implied trust results in favor of the grantor in a deed from a father to his son where such deed expresses a valuable consideration, contains an *habendum* clause and usual covenant of warranty.

2. DEED AND NOTE — *Invalid Consideration — Fradulent Sale of Goods.* Where a father conveys lands to his minor son without any actual consideration, in trust for the use and benefit of the grantor, and thereafter, in execution of such trust, the son reconveys to the father, no indebtedness results from father to son on account of such transactions; and a note subsequently given by the father to the son for the purpose of creating an indebtedness to be used as a consideration for a sale of a stock of merchandise from the father to the son, for the purpose of defrauding the creditors of the father, cannot derive a valid consideration from such transactions.

3. GOODS — *Sale, Void as to Creditors.* The trial court found that the only actual consideration for the sale of the stock of goods in controversy by E. S. B. to M. E. B. was certain alleged indebtedness from E. S. B. to M. E. B., a large portion of which consisted of said fraudulent note and other invalid claims, and that such sale on the part of E. S. B. was for the purpose of hindering and delaying his creditors in the collection of their debts, and that M. E. B. either had actual knowledge of such intention or had knowledge of such facts as should put a prudent man upon his inquiry. *Held,* That the court correctly decided that such sale was void as to the creditors of E. S. B.

*Error from Rooks District Court.*

ACTIONS in attachment by *Albert E. McKinley* and others against *E. S. Beavers.* Marion E. Beavers replevied the goods, and moved to dissolve the attachments. The replevin action and the motions to discharge the attachments were, by

agreement, all heard together, and tried on their merits. Upon the hearing of the several cases, judgments were rendered in favor of the attaching creditors and against Marion E. Beavers. The Beaverses bring error. At the session of the court in February, 1893, it was decided, and there was filed herein an opinion, (syllabus and opinion by GREEN, C.,) recommending that the judgment of the district court be reversed, and that a new trial be granted. By the court, it was so ordered — all the justices concurring. The syllabus therein formulated and declared to be the law is as follows:

"B. conveyed 160 acres of land, which had been taken under the homestead law, to his minor son, at a time when he was not in debt, by a warranty deed in the usual form, with an *habendum* clause, for the expressed consideration of $1,-000; and the son afterwards reconveyed the same land to his father, taking from the latter a note for $1,500, and the father afterwards mortgaged the land for a like sum to go into business. *Held,* That the conveyance from the father to the son was not in trust for the benefit of the former, and that the reconveyance from the son to the father was not made in pursuance of any trust. No implied trust can result in favor of the grantor in a deed from a father to a son, where such deed expresses a valuable consideration, and contains an *habendum* clause and the usual covenant of warranty."

The defendants in error in due time filed a motion for a rehearing. On June 10, 1893, the court sustained the motion, and filed herein a new syllabus, *supra,* and the opinion, *infra.*

S. T. Fenn, and M. C. Reville, for plaintiffs in error:

E. S. Beavers had the right to prefer one creditor to another, and to pay such preferred creditor in full, although it may have the effect to wholly defeat the collection of all other creditors' claims. *Arn v. Hoerseman,* 26 Kas. 413; *Avery v. Eastes,* 18 id. 505.

"A debtor cannot commit fraud upon his creditors by disposing of his homestead." *Hixon v. George,* 18 Kas. 254; *Ruth v. Ford,* 9 id. 17; *Gassett v. Grout,* 4 Metc. 490. See,

also, *Van Wyck v. Seward,* 6 Paige, 62; *Baker v. Bliss,* 39 N. Y. 70; *Gridley v. Watson,* 53 Ill. 53; *Stewart v. Rogers,* 25 Iowa, 395; *Sheppard v. Thomas,* 24 Kas. 780.

"Fraud is never presumed, but must be established by evidence, and when the creditors of the vendor assail the transfer for fraud, the burden of proof rests upon them to show the fraud." *Baughman v. Penn,* 33 Kas. 504.

*A. H. Ellis,* for defendants in error:

The party here complaining did not make any request for any findings whatever, and did not complain in any manner in the court below that the findings which were made did not authorize a determination of the issues against him. Under these circumstances, we contend he cannot here attack the so-called special findings. *Typer v. Sooy,* 19 Kas. 593; *Osborne v. Young,* 28 id. 769.

If the $1,500 claim was fraudulent, the whole transaction was rendered fraudulent and void. *Wallach v. Wylie,* 28 Kas. 152; *McDonald v. Gaunt,* 30 id. 693; *Gollober v. Martin,* 33 id. 252; *Kaiser v. Heavenrich,* 5 id. 324.

The court below not only found that the consideration was fraudulent, but found that Marion E. Beavers had actual knowledge of such fraudulent intent on the part of his father, or of facts sufficient to put a prudent man upon inquiry. *Gollober v. Martin,* supra.

Upon review here, the court will not set aside a judgment of an inferior court upon the weight of evidence, but will only disturb it where there is no evidence to sustain the findings of the court below.

The opinion of the court was delivered by

ALLEN, J.: This was a case heard before the commissioners, and an opinion filed in February by GREEN, C. Marion E. Beavers is plaintiff in this court. In the title of the case, both in the petition in error and the opinion heretofore filed, the defendants in error are named as plaintiffs, and the titles to the cases, which were tried together in the court below, are

retained here. On the argument of the motion for a rehearing before the court, it is claimed that the position taken by the trial court and the grounds of its decision have been misapprehended, and that the questions discussed in the opinion are not in the case; that the plaintiffs below never maintained any such position, or urged as a rule of law any such proposition, as the opinion in the case discusses and assumes that the trial court sustained.

The question at issue is, whether or not the sale of a stock of goods from E. S. Beavers, the father, to M. E. Beavers, the son, was made for the purpose of hindering, delaying and defrauding the creditors of the father. The district court made very full findings of fact, only a very small portion of which were referred to in the opinion. With the law, as declared in the opinion by GREEN, C., we are entirely satisfied, and counsel for defendants in error expresses himself as entertaining no doubt of the correctness of the legal propositions as stated in the opinion, but contends that they are not involved in this case, and are by no means decisive of it. The transactions connected with the conveyance of the homestead by E. S. Beavers to M. E. Beavers, and the reconveyance by the son to the father, are important only as they bear on the question whether or not a certain $1,500 note, given by the father to the son, in fact evidenced a *bona fide* indebtedness, and could therefore be a valid consideration for the transfer of the stock of merchandise in controversy. The facts with reference to this particular transaction, as found by the trial court, are as follows: About the year 1880, E. S. Beavers entered the south half of the southeast quarter of section 21, and the west half of the northeast quarter of section 28, township 9, range 20, in Rooks county, under the homestead law, and perfected his title thereto prior to the 1st day of October, 1886. He was a traveling salesman, working on a salary. His two sons, Marion E. and Bruce W., resided on the homestead a part of the time, and attended school in Kansas City a portion of the time. On October 1, 1886, E. S. Beavers conveyed this land to M. E. Beavers, and ex-

pressed in the deed a consideration of $1,000, but, in fact, no consideration was paid. Immediately after making said conveyance, E. S. Beavers made a preëmption filing on another quarter section of government land, and made entry and payment therefor about six months thereafter, in the month of May, 1887. On the 28th day of May, 1887, M. E. Beavers reconveyed the homestead to his father, the expressed consideration in the deed being $1,500. The court then proceeds to state that there is offered in evidence a note of the date of May 30, 1887, executed by E. S. Beavers to M. E. Beavers, for $1,500, payable on or about the 9th of July, 1888, bearing 10 per cent. interest, which M. E. Beavers testifies was given to him in consideration of the purchase price of said land. E. S. Beavers, however, testifies that said note was given in consideration of an incumbrance of $1,500 which he, E. S. Beavers, had placed on said land after it was reconveyed to him. After continuing at length on other matters connected with the case, some of which will be hereafter mentioned, the court proceeds:

"On the question of intent to defraud the creditors of E. S. Beavers, I find that the conveyance of the homestead from E. S. Beavers to M. E. Beavers was in trust for the use and benefit of E. S. Beavers, and that the reconveyance was in execution of that trust, and that the $1,500 note does not represent an actual indebtedness from E. S. Beavers to M. E. Beavers."

From this language it was assumed that the trial court found that a trust resulted by operation of law from the conveyance of the homestead from the father to the son. A careful examination of the findings of the court, and of the evidence in the case, convinces us that the court did not so find, but that the court, in fact, found that the conveyance from the father to the son was in trust in the strictest sense of the term, and was conveyed to him in confidence on the part of the father that the son would reconvey on request, that the confidence of the father was well founded, and that

the son, although under no legal obligation to do so, so far as the evidence in the case discloses, did execute the trust.

It is contended that the findings by the trial court are not supported by the evidence. The evidence with reference to the giving of this note is, to say the least, very unsatisfactory. The deed from son to father is dated May 28, the note is dated May 30. E. S. Beavers testified that he sold the land to his son. The deed expressed a consideration of $1,000, but he testifies that the son did not give him anything at all for it. As to the giving of the note, he was asked:

"Ques. Was that note given on the same day that this deed was given? Ans. I do n't know whether it was or not."

The testimony of both father and son with reference to the time and place of the giving of this note was very indefinite. The conveyance of the homestead to the son was immediately followed by the filing of a preëmption claim by the father on another quarter section of land; and he testifies that he was aware that he could not hold title to the homestead and also make the filing on the preëmption claim. It was admitted that he proved up on the southwest quarter of section 21 on May 3, 1887, and the reconveyance from his son was on the 28th of that month. So the title to the homestead was vested in Marion E. less than a month more than the time required, and in fact taken, to secure title to the other piece of land. We think all these circumstances, when taken together, tended strongly to show that the homestead was conveyed by E. S. Beavers to his son in trust for the grantor, and that the fact that the son reconveyed so soon after the title to the other land had been perfected indicates that such a reconveyance was in execution of that trust.

We think the evidence sustains the findings of the court. This of itself would be sufficient to require the affirmance of the judgment, but a full and careful examination of the record leaves no doubt in our minds that this case was correctly

decided by the district court. The court finds that E. S. Beavers transferred to his son M. E. property as follows:

| | |
|---|---:|
| Stock of merchandise | $2,117 00 |
| Book accounts | 143 22 |
| Store building | 800 00 |
| Town lots in Palco | 300 00 |
| With residence | 100 00 |
| Other lots in Palco | 225 00 |

that Marion Beavers was married, had a furnished house, a team and buggy; that he had been away attending school at Kansas City; that the father and younger son lived during a portion of the time with Marion and his wife as one family. Marion E. Beavers did not become of age until July 9, 1888, and the alleged sale of the goods was made in the following December. The only property he had, aside from what he claims to have earned after he became of age, was that derived from his grandparents, which amounted at the time of this transaction to $1,151.25, and such as his father may have given him. The alleged assumption by Marion E. Beavers of the indebtedness of the father to the minor son is hardly sustained by the evidence. With reference to that matter, the father testified that he had nothing to do with it—"that it is a matter fixed up between the boys themselves." The mere giving of a note by Marion Beavers to his brother for the amount due him from their father could not operate to relieve the father from his indebtedness to his minor son; and the trial court found that this was not a legal assumption on the part of M. E. Beavers, and that it was not made in good faith.

Considering that the father was indebted to the amount of $3,000 for the very merchandise, in part at least, in controversy in this case; that he conveyed all the property he had that was of any considerable value to his son, and that the consideration for such conveyance is patched up in such manner as is shown in this case, we think the conclusion reached by the trial court entirely correct.

The rehearing will be granted and the judgment affirmed.

All the Justices concurring.